**RIVERMONT INN, INC., Appellant,**

v.

**BASS HOTELS RESORTS, INC., and Holiday Hospitality Franchising, Inc., Appellees.**

No. 2002–CA–000468–MR.

Court of Appeals of Kentucky.

April 4, 2003.

Case Ordered Published by Court of Appeals Aug. 8, 2003.

---

8. KRS 133.020.

Donald W. Darby, Daniel G. Brown, Darby & Gazak, PSC, Louisville, KY, for Appellant.

Bart L. Greenwald, Sheryl G. Snyder, Griffin Terry Sumner, Frost Brown Todd LLC, Louisville, KY, for Appellees.

Before BARBER, DYCHE, and TACKETT, Judges.

### OPINION

TACKETT, Judge.

Rivermont Inn, Inc. ("Rivermont") appeals from a summary judgment entered in its fraud action against Holiday Hospitality Franchising, Inc. ("Holiday"), and Bass Hotels & Resorts, Inc. ("Bass"). Rivermont argues on appeal that summary judgment was improper for several reasons, discussed *infra*. After a careful review, we affirm.

This cause of action arose from the purchase of a hotel on Zorn Avenue in Louisville, Kentucky, by Rivermont from MD Investments ("MD"). MD was operating the hotel as a Holiday Inn at the time, and Rivermont intended to continue operating the hotel as a Holiday Inn. However, franchises are not transferable, and Rivermont began negotiations with Holiday in order to obtain a franchise license to operate the hotel as a Holiday Inn. Rivermont already operated a franchise at another hotel in Clarksville, Indiana. Substantial upgrades were proposed during the course of the application for change of ownership by Rivermont, which would cost approximately $1.4 million. This Property Improvement Plan (PIP) was a key feature in Rivermont's attempt to purchase the hotel and its franchise application. Rivermont's franchise application was scheduled for review three times between November 1997 and February 1998. During the application process, Rivermont acknowledged in writing several times that Holiday does not enter into oral agreements "with respect to licenses or matters pertaining to the granting of a license." The documents further stated that Holiday "reserves the sole right to approve or disapprove the Application for any reason it may determine."

Three days prior to closing on the hotel property, which was scheduled for February 6, 1998, Rivermont allegedly contacted Judy Bloodworth[1], Vice President of Franchise Administration for Holiday, informed her that the closing would take place in three days, and asked whether Rivermont should proceed with the closing. According to Rivermont, Bloodworth told them that licensing would be forthcoming and to close on the property. Rivermont proceeded with the closing, but on February 10, 1998, when the Franchise Application Committee met, they approved the franchise subject to the condition that the hotel would not be on Holiday's national network until the PIP was completed to Holiday's satisfaction. Rivermont did not accept this condition, and later filed this action, alleging fraud and alleging that they had detrimentally relied on Holiday's "promise" to grant a franchise. After dis-

---

1. Bloodworth testified by deposition that she did not recall being contacted by Rivermont, and no record of the telephone conversation exists, either in the form of recording or handwritten notes. However, for purposes of summary judgment, the circuit court treated the allegation as true, and on appellate review, we are bound to do the same.

covery, Holiday moved for summary judgment on all claims. In a very thorough opinion, the circuit court granted summary judgment. This appeal followed.

■ With respect to the claim of fraud, the circuit court held that Rivermont could not prove the elements of fraud by clear and convincing evidence. The six elements of fraud are set forth in *United Parcel Service v. Rickert*, Ky., 996 S.W.2d 464 (1999) as follows: the defendant a) made a material representation; b) which was false; c) which was known to be false or made recklessly; d) which was made with inducement to be acted upon; e) which plaintiff acted in reliance upon; and f) which caused plaintiff injury. Rivermont alleges that Holiday falsely represented that Rivermont would be granted a franchise. The circuit court held that Bloodworth's alleged assurance to Rivermont that its application would be approved was a prediction of future events only, not a statement of past or present material fact. Rivermont argues on appeal that Holiday had a duty to disclose the mere possibility that the hotel would have to go off-network until the PIP was complete, and that the circuit court therefore should not have granted summary judgment. Holiday argues that the statements attributed to Bloodworth are predictions of the future conduct of the Franchise Approval Committee, and therefore cannot be the basis of a fraud claim. *St. Martin v. KFC Corp.*, 935 F.Supp. 898, 909 (W.D.Ky.1996). We agree with the circuit court that the statement is a prediction, and not a statement of present or past material fact. Rivermont argues that Holiday had a duty to disclose the mere possibility that the application could be denied or could come with conditions; the record reveals that Holiday did so, and Rivermont acknowledged in writing that Holiday may deny an application "for any reason it may determine." Rivermont argues that the case of *Bryant v. Troutman*, Ky., 287 S.W.2d 918 (1956) stands for the proposition that "non-reliance" clauses are never enforceable in Kentucky. We disagree; a review of that case reveals that the defendant in *Bryant* did not even argue that the non-reliance clause operated to absolve it of all liability from fraud; rather, it argued that the non-reliance clause operated to prevent the plaintiff from introducing parol evidence of fraudulent, oral misrepresentations at trial. The *Bryant* case hardly stands for the sweeping proposition that Rivermont wishes it to. Also, *Bryant* concerned fraudulent inducement to purchase real estate, where the seller fraudulently concealed defects from the purchaser. The facts of this case are very, very different from the facts of *Bryant*; here, Rivermont acknowledged in writing that Holiday did not make oral agreements or promises with respect to franchises or licenses, then, with full knowledge of this fact, requested that Bloodworth do exactly that, or at least to give some assurance that the application would be granted. Bloodworth was asked to make a prediction regarding the approval of the application; taking the allegations as true for purposes of summary judgment, the circuit court nevertheless concluded that Bloodworth did no more than make a prediction, which is not sufficient to constitute fraud by misrepresentation. We hold that the circuit court correctly held that there was not enough evidence to support a claim of fraudulent misrepresentation, in light of all the facts that Rivermont knew and Rivermont's previous agreement acknowledging that Holiday did not make oral representations respecting licenses and franchises. Further, we hold that as a matter of law, a party may not rely on oral representations that conflict with written disclaimers to the contrary which the complaining party earlier specifically acknowledged in writing,

following the precedents established in other jurisdictions. *See Trifiro v. New York Life Ins. Co.*, 845 F.2d 30 (1st Cir. 1988).

■ Rivermont also focuses on Bloodworth's "apparent authority" to bind Holiday regarding licenses in general and her actual authority to issue temporary licenses. The circuit court, in considering this issue, stated that "in Kentucky a principal must by his actions, words or even inaction, create the appearance that a particular person at issue is his agent, authorized to act in his stead." Opinion and Order at page 6 (citation omitted). However, prior to any alleged representations by Bloodworth, Holiday specifically stated in writing that it "does not enter into oral agreements or understandings with respect to licenses or matters pertaining to the granting of a license." The circuit court correctly held that "where this type of specific disclaimer is made, apparent authority simply does not exist." *Id.* Rivermont cannot acknowledge in writing that no person has authority to bind Holiday through an oral agreement and then later claim that anyone had "apparent authority" to do so.

■ Further, as the circuit court noted, Rivermont's application was in fact approved, but came with a condition that Rivermont found unacceptable. Even taking Rivermont's assertion that the telephone conversation with Bloodworth took place exactly as described, Rivermont never asked about the possibility of conditional approval, even though it knew that it was going to undertake substantial renovation of the property and had submitted a plan to improve the property to Holiday. Thus, Rivermont argues that Holiday's failure to inform them of the likelihood of any condition constitutes fraud by omission, discussed *infra*. Because the statement on its face was not false, however, an action for fraud by misrepresentation does not lie.

■ Turning, then, to the claim of fraud by omission, we conclude that the circuit court did not err in granting summary judgment. Fraud by omission is not the same, at law, as fraud by misrepresentation, and has substantially different elements. To prevail on a claim of fraud by omission, or fraud based on failure to disclose a material fact, a plaintiff must prove: a) that the defendants had a duty to disclose that fact; b) that defendants failed to disclose that fact; c) that the defendants' failure to disclose the material fact induced the plaintiff to act; and (d) that the plaintiff suffered actual damages. *Smith v. General Motors Corp.*, Ky.App., 979 S.W.2d 127 (1998). A duty to disclose facts is created only where a confidential or fiduciary relationship between the parties exists, or when a statute imposes such a duty, or when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure. *Dennis v. Thomson*, Ky., 240 Ky. 727, 43 S.W.2d 18 (1931). As the circuit court noted, there is clearly no fiduciary or confidential relationship between the parties, nor is there a duty created by statute in this case. Therefore, the plaintiff must prove that the conversation with Bloodworth was a partial disclosure of material facts that created the false impression of full disclosure. However, as the circuit court held, this claim must fail both because of the prior acknowledgement in writing that Holiday would make no oral representations nor enter into oral agreements with respect to the granting of a license. Rivermont cannot, having signed such an acknowledgement, claim that such an oral representation led it to believe that it would receive a franchise, but with the fraudulent omission that the hotel would have to be off the national network until

the PIP was complete. In addition, as the circuit court correctly stated, there was no evidence in the record which indicated that Bloodworth, or anyone else, knew of such a condition until the committee met approximately one week after the conversation allegedly occurred.

■ Rivermont also makes an argument for recovery in quantum meruit, arguing that Holiday was unjustly enriched. However, an essential element for recovery in quantum meruit, as Holiday pointed out at oral argument, is that the party seeking recovery must perform some service for which he must be compensated in order to avoid unjustly enriching the other party. Here, Rivermont simply did not perform any services for Holiday for which it might be entitled to recover in quantum meruit. Its argument that the application fee falls under quantum meruit is unavailing.

■ Turning now to the claim of breach of contract, Rivermont argues that the circuit court erred in holding that no binding oral contract was formed by the conversation with Bloodworth. The circuit court held that even if an oral contract was formed, it would be unenforceable under the Statute of Frauds. The franchise application was for a five-year term; even if Bloodworth effectively "approved" the franchise application by telling Rivermont that the application would be approved, the statute of frauds clearly applies because the contract cannot be performed within one year. Rivermont argues that the circuit court erred for two reasons. First, it argues that the statute of frauds does not apply where the contract is the product of actionable fraud or if the defendant should be equitably estopped from denying the contract. Second, it argues that the statute of frauds may not be invoked when one party has fully performed its obligations under the contract. Ignoring for a moment the obvious problem that no enforceable oral contract can exist in light of the prior signed acknowledgments that Holiday does not enter into oral agreements with respect to the grant of licenses, we shall consider each of these arguments in turn.

■ The first argument, that the statute of frauds cannot be invoked where the contract is the product of actionable fraud, fails of necessity because the contract is clearly not the product of actionable fraud. The circuit court correctly held that no action for fraud can be sustained; accordingly, this exception to the statute of frauds does not apply. Rivermont also claims that the "oral contract" must be enforced because of its detrimental reliance upon an alleged oral promise. This alone is not sufficient to defeat the statute of frauds; actual fraud must be proven. *Smith v. Ash,* Ky., 448 S.W.2d 51, 53 (1969). Rivermont confuses promissory estoppel with equitable estoppel, and incorrectly interchanges the terms in its brief. Promissory estoppel can be invoked when a party reasonably relies on a statement of another and materially changes his position in reliance on the statement. The circuit court correctly held that promissory estoppel cannot be invoked here because the element of reasonable reliance is missing. A party cannot reasonably rely on oral statements when it has acknowledged in writing several times that oral statements are not binding and may not be relied upon. A key element of promissory estoppel, conveniently ignored by Rivermont, is that the defendant must reasonably expect an oral promise or understanding to induce reliance on the part of the plaintiff. Here, Holiday having received acknowledgement in writing on more than one occasion from Rivermont that no oral promises are made with respect to the granting of licenses, Holiday could not reasonably expect that River-

mont would solicit an oral promise from one of its vice presidents and then change its position in reliance on such a promise. Even assuming, arguendo, that the conversation took place exactly as Rivermont asserts, it does not follow that the doctrine of promissory estoppel may be invoked as a result of that conversation.

■ Equitable estoppel, by contrast, may be invoked by an innocent party who has been fraudulently induced to change their position in reliance on an otherwise unenforceable oral agreement. *Bennett v. Horton*, Ky., 592 S.W.2d 460 (1979). To invoke the doctrine, a party must show

> (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Weiand v. Board of Trustees of Kentucky Retirement Systems*, Ky., 25 S.W.3d 88, 91 (2000). As the circuit court held, it is clear that Rivermont does not have a "lack of knowledge" with regard to the facts, nor did it rely in good faith upon the conduct or statements of the defendants. It acknowledged in writing that no oral agreements or understandings existed with respect to licenses. There is no reason, under these circumstances, to apply the doctrine of equitable estoppel.

■ The second argument, that the statute of frauds may not be invoked when one party has fully performed under the contract, must also fail. Rivermont argues that it fully performed the contract when it purchased the property. This argument fails in light of the fact that Rivermont did not purchase the hotel from Holiday, but from a third party, MD Investments. No consideration was given to Holiday at all, and the purchase of the property was in no way "full performance" within the meaning of the statute of frauds.

■ Rivermont argues that the circuit court improperly dismissed its claim for breach of the implied covenant of good faith and fair dealing, which it claims that Holiday breached by acting "dishonestly or outside of accepted commercial practices, or with an improper motive or in an unreasonable manner that was arbitrary, capricious, or inconsistent with the reasonable expectations of the parties." Plaintiff's Response to Motion for Summary Judgment at 39–40. As the circuit court noted, "Plaintiff's insistence that it is 'the actual decision making process' and 'not ... the result reached' which is the focus of this claim is simultaneously disingenuous and very telling. Plaintiff's entire case is precisely about the result reached." Opinion and Order at 16. The court, relying on the fact that the other Holiday Inn operated by Rivermont had a low quality assessment score and that the PIP for the Zorn Avenue property provided for over $1.4 million in improvements, concluded that, far from acting arbitrarily in imposing the condition that the Zorn Avenue hotel would be off the national network until the completion of the PIP, Holiday's decision was based on legitimate business concerns over the property that would bear its trademarks. A franchisee "cannot use the implied covenant of good faith and fair dealing to second-guess [a] legitimate business decision." *Burger King Corp. v. Agad*, 941 F.Supp. 1217 (N.D.Ga.1996).

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.